IN THE MATTER OF THE APPLICATION OF EDWARD A. GARDNER FOR A MANDAMUS TO THE CLERK OF THE BOARD OF SUPERVISORS OF KINGS COUNTY.

| 68 | 467 |
| 122 | 197 |
| 68 | 467 |
| 133 | 570 |

A writ of *mandamus*, upon the application of one claiming title to an office, will not be granted, for the purpose of determining the validity of his claim, where there is a serious question in regard thereto, and another person is holding and exercising the functions of the office; and this, although the attorney-general refuses to bring an action in the nature of a *quo warranto*.

The clerk of a board of supervisors has no authority to direct or control any of its proceedings, and a *mandamus* will not be granted, directed to and requiring him to recognize the relator as a member of the board, and to record his vote as such.

In November, 1874, G. was elected alderman of the city of Brooklyn under the charter of 1873 (chap. 863, Laws of 1873), which provides for the election of aldermen for two years, who are to hold office until their places are supplied by the election of new members, and which also provides that each alderman shall be *ex officio* a supervisor. Under the act of 1875 (chap. 633, Laws of 1875), amending said charter by authorizing and directing the election of supervisors, such officers were elected. G. applied for a *mandamus* to be directed to the clerk of the board of supervisors, requesting him to recognize the applicant as a member of the board and to record his vote as such, alleging that the attorney-general refused to institute proceedings by *quo warranto*. *Held*, that the writ was properly denied; that the constitutionality of the act of 1875, and the right to the office could not be thus determined.

(Argued February 6, 1877; decided February 20, 1877.)

APPEAL from order of the General Term of the Supreme Court in the second judicial department affirming an order of Special Term denying a motion for a *mandamus*.

The affidavit of the applicant set forth, in substance, that in

November, 1873, he was duly elected alderman of the Fifth ward of the city of Brooklyn under and in pursuance of the charter (chap. 863, Laws of 1873), and that he entered upon the duties of such office January 1, 1874, and that as alderman he was *ex officio* supervisor; that, under the provisions of the act chapter 633, Laws of 1875, in November, 1875, one Henry Carr was elected alderman and one Henry P. Coates supervisor; that said act was in violation of the amendment to the State Constitution, adopted January, 1875 (§§ 18 and 22, art. 3), and that said act, therefore, and all acts done under it were void; that Edward P. Cadley, the clerk of the board of supervisors of Kings county, refuses to call deponent's name as a member of the board, or to record his vote, or to recognize him in any way as a member of said board; that the attorney-general refused to commence proceedings by *quo warranto* to try the applicant's title to the office.

The motion was for a writ directed to the clerk requiring him to call the name and record the vote of the applicant at all meetings of the board and to recognize him as a member thereof.

*Robt. Johnstone* and *J. Albert Wilson* for the appellant. A *mandamus* is a proper remedy to set aside a void election. (*Rex* v. *Cathmartin*, Burr., 2008; *Rex* v. *Colchester*, 2 T. R., 259; *Rex* v. *Askew*, Burr., 2186; *Rex* v. *Cambridge*, id., 2008; *Mawbray* v. *Madison*, 1 Cranch, 186; *Comm.* v. *Rositer*, 2 Binn., 262; *Rex* v. *Nottingham* [N. P.], 480; 6 A. & E., 355; *Rex* v. *Binghamton*, 7 id., 559; *Queen* v. *East. R. R. Co.*, 10 id., 53; *People* v. *Mead*, 24 N. Y., 114.) The petitioner has no other remedy. (Laws 1873, chap. 863, § 6; 2 Salk., 436; *Haywood* v. *Marshal*, 9 Md., 83; *Drew* v. *Judges of Clear Spring*, 3 H. & M., 1; *Strong's Case*, 20 Pick., 497.) The writ was properly directed to the clerk. (1 R. S., m. p. 367, § 9.)

*Winchester Britton* for the respondent. A *mandamus* will not lie in a case like the one at bar. (*People* v. *Suprs. of*

*Chenango*, 11 N. Y., 573; *People* v. *City of N. Y.*, 3 Johns. Cas., 79; *People* v. *Scrughan*, 25 Barb., 216; *Doolittle* v. *Suprs. Broome Co.*, 18 N. Y., 155; *King* v. *Mayor, etc.*, 2 D. & E., 259; *People* v. *Stevens*, 5 Hill, 616; *Mott* v. *Connolly*, 50 Barb., 516; *Demarest* v. *Wickham*, 13 Alb. L. J., 62; Moses on Mandamus, 150; *Comm.* v. *Co. Comrs.*, 5 Rawle, 75; *State* v. *Albin*, 44 Mo., 346; McCrary Am. Law of Elections, § 322; High on Ex. Ren., § 50; *People* v. *Hawkins*, 46 N. Y., 9; *People* v. *Fay*, 3 Lans., 398; *People* v. *Thompson*, 25 Barb., 73; *People* v. *Attorney-General*, 22 id., 114; *People* v. *Attorney-General*, 15 Sup. Ct. R., 334.)

MILLER, J. In his application to the court below the relator sought for a *mandamus* requiring the clerk of the board of supervisors of Kings county to call his name and record his vote as one of the supervisors and to recognize him in that capacity at all meetings of said board. The proceeding is but a mode of testing the right of the relator to the office in question in disregard of the usual course by *quo warranto.*

The clerk of a board of supervisors is selected and may be removed at their pleasure, is under the direction of the members of that body and of its presiding officer, and by virtue of his office has no authority to direct or control any of its proceedings, independent of the formal duties he is selected to discharge. As he is a subordinate and a clerical officer his action must necessarily be confined to the performance of these duties without the exercise of any authority, independently of the board. He keeps the minutes which may be corrected by the direction of that body, and it is difficult to see how his recognition of a person as a member would be of any importance, as the board could direct him to correct any entry which he might make in such minutes or overrule any action he might take. In fact such an act might bring him in direct conflict with the presiding officer and the members and seriously interfere with the proceedings of the board, and it is easy to see would not, in any way, decide as to the validity of the relator's claim. Such a mode of testing the right to

the office would be unusual, extraordinary and adverse to all rules and precedents which the law has established, and cannot be upheld. But there are other grounds equally potent and controlling for sustaining the decision of the Supreme Court. No principle is better settled in the law than that a *mandamus* will only lie when there is no other remedy, and that where the applicant has a clear legal right to the remedy sought. The books are full of cases which support this doctrine, and it is unnecessary to cite authorities to uphold a principle so familiar and so well understood. That the relator has another remedy, if he has any right by *quo warranto*, is quite clear; and if another person has usurped and claims to hold an office to which he is entitled there is usually no difficulty in obtaining redress in that form. The legal presumption is that a full opportunity will be given to assert a legal right, if any he has, in accordance with the ordinary course of procedure in such cases, or, if permission to do so cannot be obtained, that sufficient reasons exist for refusing the same by the attorney-general who, as the law officer of the State, has the power to make application to the court that the writ be issued.

The appellant's counsel claims that a *mandamus* may issue to set aside a void election and we are referred to some authorities which, it is claimed, uphold this position. We think they are not in point and have no direct bearing upon a case where it is sought to oust a person in office from the possession of the same. In *Rex* v. *The Mayor, etc., of Cambridge* (4 Burr., 2008) a person had been elected mayor who was clearly ineligible from prolonged absence, and it was held that the election was merely colorable and evasive of the law and void and no election, and the court would not keep a corporation without a head but grant a *mandamus* to proceed to an election. It was said that if the officer was sworn in they might think it proper that the right should first be tried, but not if it was doubtful or questionable. It will be observed that the *mandamus* was not granted to oust another actual

claimant or to interfere with his acts and the case has no application here.

In *Rex* v. *Mayor of Colchester* (2 Tenn., 25–7), a *mandamus* was refused when there was an officer *de facto*, and the party had another remedy by *quo warranto*, though both of them claimed under the same election. In the case of *Rex* v. *Bankers* (3 Burrows, 148), cited in 2 Tennessee (*supra*), the remarks of Lord MANSFIELD, which are cited, do not aid the relator's case, as they only apply where the election is clearly void. None of the cases to which we have been referred, uphold the position that a *mandamus* is a proper remedy where, as in the case at bar, there is a serious question as to the right of the relator, and another person holds and exercises the functions of the office claimed which is an established fact. It would in fact, we think, be in direct violation of the rules which have long been settled, to interfere by *mandamus* in any cases of this nature, establish entirely a new system of practice, and add a new remedy where none is required or authorized.

The position of the relator's counsel that a *quo warranto* will not lie against the persons who are in possession of the office, because such persons were elected in the place of both the relator and another, who were aldermen and *ex-officio* supervisors at the same time, would be quite as applicable to proceeding by *mandamus*, and liable to the same objections. It is true that there are *dictum* in some of the English cases, which qualify the application of the rule, and perhaps make exceptions in some cases, but we think that none of them are analogous even if the same rule could be properly invoked. It has also been held, in some of the decisions of the courts in other States that *mandamus* was the proper remedy in some cases for a party who claims title to an office, where the office is filled by another. But even if these cases were parallel, they are sufficiently answered by the remark that such is not the law in this State. It was settled at a very early period in its judicial history, that when a person is already an officer by color of right, the court will not grant a *mandamus* to admit another person who claims to have been duly elected, and that

the proper remedy is by an information, in the nature of a *quo warranto*. (*People* v. *The Mayor*, 3 Johns. Cases, 79.) This doctrine has since been approved and upheld by repeated decisions, and has become settled law. (*The People* v. *Stevens*, 5 Hill, 628, 629, and authorities cited; *Morris* v. *The People*, 3 Denio, 396.) The rule is distinctly asserted in the cases last cited that the only remedy to try the title to an office is by *quo warranto*, and to sustain the position of the relator's counsel, we would be compelled to overrule these adjudications.

After a careful consideration, it is very evident that the remedy by *mandamus* is not appropriate in the case at bar. It is equally manifest, that the relator also fails to establish another requisite to entitle him to the relief sought, and that is, that his right is clear. The term of the office to which the relator was originally elected in 1874 had expired; the office had been abolished by the legislature, and although the relator had been a candidate for election, as supervisor, against the present incumbent, he was defeated at the election and his competitor has since held the office and discharged the duties of the same. We think, also, that it is clear the relator has no standing whatever, and is not in a position to assert any claim to the office in question, even if the present incumbent was not entitled to hold the same. And, under such circumstances, no such right is established as would entitle the relator to a writ of *mandamus*, although there were no other obstacles in the way. We do not deem it necessary to consider the question, whether the legislature had power to amend the charter of the city of Brooklyn, as was done by the act of 1875, and the election under that act was void, because it was passed in violation of the Constitution. It is not necessary for the decision of the case, and we are not, therefore, called to pass upon the validity of the act in question. Sufficient reasons exist otherwise for upholding the judgment of the General Term, and it must be affirmed.

All concur.

Order affirmed.