SAMUEL ROWLAND, Appellant, *v.* THE MAYOR, ALDERMEN AND COMMONALTY OF THE CITY OF NEW YORK, Respondents.

Plaintiff was appointed an attendant of the Supreme Court by the board of supervisors of the county of New York, under the provision of the Code of Procedure (§ 28), requiring the "supervisors of the several counties" to provide the courts appointed to be held therein, with * * * attendants, * * * suitable and sufficient for the transaction of their business. *Held*, that he was "in office" within the meaning of the provision of the act of 1870 (§ 3, chap. 382, Laws of 1870), in reference to said county, which prohibits the board of supervisors of said county from "increasing the salaries of those now in office, or their successors; and that, therefore, an ordinance of said board increasing plaintiff's salary was illegal and void.

The intention of said act was to extend the prohibition to all persons who, under any name, were the recipients of salaries from the city treasury.

*Holley* v. *The Mayor* (59 N. Y. 170), *Brennan* v. *The Mayor* (62 id. 365), distinguished and limited.

*Wines* v. *The Mayor* (70 N. Y. 613), distinguished.

(Argued December 9, 1880; decided January 18, 1880.)

APPEAL from judgment of the General Term of the Superior Court of the city of New York, entered upon an order made November 4, 1878, affirming a judgment in favor of defendant, entered upon an order dismissing plaintiff's complaint on trial. (Reported below, 12 J. & S. 559.)

This action was brought by plaintiff to recover a balance of salary alleged to be due him and unpaid for his services as an attendant upon the Supreme Court in the county of New York.

The facts are set forth with sufficient particularity in the opinion.

*Elliot Sandford* for appellant. To constitute an officer, there must be something more than a mere employment. There should be a fixed term continuing duties and powers as well as duties. (*Olmstead* v. *Mayor*, 42 N. Y. Super. Ct. 481; 3 Wall. 93; *Sullivan* v. *The Mayor*, 48 How. 238; 75 N. Y. 42; *People* v. *Nichols*, 52 id. 485; *Costello* v. *The Mayor*, 63

id. 50; 47 How. 491–493; *McCullough* v. *The Mayor, etc.*, 51 id. 486; *Smith* v. *The Mayor*, 67 Barb. 223; *Collins* v. *The Mayor, etc.*, 3 Hun, 680.) To bring plaintiff within the terms of the restraining clause of section 3 of the act of 1870 (chap. 382) it was necessary to show that he was a county officer. (*Whitmore* v. *The Mayor, etc.*, 67 N. Y. 21; *Jarvis* v. *The Mayor, etc.*, 49 How. 354–356; *McCluskey* v. *Cromwell*, 11 N. Y. 601, 602; *Johnson* v. *Railroad Co.*, 49 id. 462.) Plaintiff was not an officer of any kind. (*Holley* v. *The Mayor*, 59 N. Y. 165, 170; 9 Hun, 662; *Brennan* v. *The Mayor*, 62 N. Y. 365.) An appointment to an office cannot be made except by a formal writing, expressing an intent to appoint the person named, and that such appointment cannot be made verbally, unless so allowed by the statute. (*People ex rel. Babcock* v. *Murray*, 70 N. Y. 521; *People* v. *Fitzsimmons*, 68 id. 514; 62 id. 370; *Beck* v. *Sheldon*, 48 id. 365; *Putnam* v. *Hubbell*, 42 id. 106; *Andrews* v. *Raymond*, 58 id. 676; 62 id. 85; 5 Daly, 274.) Section 9, chapter 583, Laws of 1870, which gave power to the comptroller to fix the salaries of attendants appointed by him, did not take away similar power vested in the supervisors. (*Murray* v. *The Mayor*, 43 N. Y. Super. Ct. 164; *Cook* v. *Nat. Bk.*, 52 N. Y. 106; *Fisher* v. *The Mayor*, 51 id. 344; *Hankins* v. *The Mayor*, 64 id. 18; *McVeaney* v. *The Mayor*, 59 How. 106; 63 N. Y. 51.)

*Chas. P. Miller* for respondent. The plaintiff was an officer within the meaning of the prohibitory clause contained in the third section of chapter 382 of the Laws of 1870, and the board of supervisors were prohibited by law, on the 26th day of May, 1870, from increasing plaintiff's salary. (*Sweeny* v. *Mayor*, 5 Daly, 274; 58 N. Y. 625; *People ex rel. Henry* v. *Nostrand*, 46 id. 381; *Brennan* v. *The Mayor*, 47 How. 178; *Freeman* v. *Auld*, 14 Barb. 14; Potter's Dwarris, 203; *Henley* v. *The Mayor of Lyme*, 5 Bing. 91–107; *People* v. *Hayes*, 7 How. 248; *Rowland* v. *The Mayor*, 44 N. Y. Super. Ct. 559; Bouvier, "Office;" Burrill's Dict. "Office, MSS.;"

*Wines* v. *The Mayor*, 9 Hun, 659 ; *Holley* v. *The Mayor*, 59 N. Y. 166 ; *Brennan* v. *The Mayor*, 62 id. 365.) So much of section 9 of chapter 382, Laws of 1870, as authorizes the comptroller to fix the salaries of court attendants is not unconstitutional. (*Matter of Astor*, 50 N. Y. 363, 367 ; *Sullivan* v. *Mayor, etc.*, 47 How. 491 ; *Connor* v. *The Mayor, etc.*, 5 N. Y. 298.) The fact that said section has been held to be unconstitutional as to the right of the comptroller to appoint attendants does not render the remainder of the section void, unless the court is satisfied, beyond a reasonable doubt, that it cannot be supported by any reasonable intendment or allowable presumption. (Cooley on Constitutional Limitations [2d ed.], 182, 183, 184, 185 ; *Kerrigan* v. *Force*, 68 N. Y. 381 ; *People* v. *Supervisors of Orange*, 17 id. 241 ; *Ogden* v. *Saunders*, 12 Wheat. 270 ; *Fletcher* v. *Peck*, 6 Cranch, 128 ; *Sun Mut. Ins. Co.* v. *New York*, 5 Sandf. 14 ; *People ex rel. Crowell* v. *Lawrence*, 36 Barb. 177 ; *Talbot* v. *Hudson*, 16 Gray, 417, 422 ; 8 id. 21 ; *Wellington, Petitioner*, 16 Pick. 96 ; *Commonwealth* v. *Hitchings*, 5 Gray, 485 ; *People* v. *Hill*, 7 Cal. 103 ; *Robinson* v. *Bidwell*, 22 id. 386 ; *Maize* v. *The State*, 4 Ind. 342 ; *Willard* v. *People*, 4 Scam. [Ill.] 461 ; *Els* v. *State*, id. 498 ; *Mayor of Hagerstown* v. *Detrecht*, 32 Md. 369 ; *In re Application of the Village of Middletown*, Court of Appeals, not reported. Opinion by FINCH, J., September 28, 1880.)

DANFORTH, J. It is admitted by the pleadings that in October, 1852, the board of supervisors of the county of New York appointed the plaintiff "an attendant upon the Supreme Court, to attend upon it and to perform the duties required to be performed by him ;" that he entered upon the performance of his duties under this appointment, and continued to perform them up to March 1, 1874 ; that in 1866 his compensation was fixed by said board at $1,200 per annum, and he has been paid at that rate up to July 19, 1872, but from June, 1870, to July 19, 1872, he received this sum "under protest." The foundation for this protest is found in the fact that on the

26th day of May, 1870, the said board of supervisors did by resolution "fix the compensation to be paid to him as such attendant at the rate of $1,500 from and after June 1, 1870;" and this action is brought to recover the difference between these two sums for the time mentioned. It is resisted upon the ground, as stated by the defendants' counsel, that the supervisors had no authority to increase the plaintiff's salary. The Special and General Terms of the Superior Court sustained this position. Its correctness is the only question upon this appeal; and this is to be ascertained by an examination of certain provisions contained in chapter 382 of the Laws of 1870. Section 3 of that act declares that "the board of supervisors of the county of New York are hereby prohibited from creating any new office or department, or increasing the salaries of those now in office or their successors." The plaintiff was appointed, it is conceded, under the provisions of section 28 of the Code of Procedure, by which "the supervisors of the several counties" were required "to provide the courts appointed to be held therein with * * * attendants * * * suitable and sufficient for the transaction of their business;" and in the language of the complaint he was, at the time of the passage of the act of 1870 (*supra*), an attendant upon the Supreme Court, "for the purpose of performing such duties as were required to be performed by him;" or, giving to those words a meaning warranted by the statute which alone permitted the appointment, he was an attendant upon the court as one necessary to it "in the transaction of its business." He was also receiving, as such attendant, compensation by virtue of the resolution of the board of supervisors. If he then held an office and received a salary, he would be within the letter of the statute. He did receive a salary — for that is only another word for compensation, stipulated to be paid for services — annual or periodical wages or pay. His mode of recompense satisfies one term of the statute. What is his position? If we accept the concise and limited definition given to it in the complaint, it is that of an "attendant upon the Supreme Court;" a court of record, of general jurisdiction, administer-

ing law and equity. He not only owes a duty to it, and is to perform such duties as are by it required to be performed, but, as we have already said, those duties are in aid of the proper business of the court, and, therefore, among others, to be present at its sittings, to execute its commands, secure due order in its proceedings, and attend upon juries, and all are as necessary as the duties intrusted to its clerks or crier. The language of the act to which he owes his appointment is somewhat different from that of the act of 1870 (chap. 408, § 11), but his duties are none the less official than those of the persons therein named, " all of whom," it declares, " shall act under the direction of the court or of the presiding justice." He owes, in like manner, a duty to it, and his employment is one in which the public are interested; its proper exercise requires capacity, diligence and attendance. Whether we look into the dictionary of our language, the terms of politics, or the diction of common life, we find that whoever has a public charge or employment, or even a particular employment affecting the public, is said to hold or be in office. However, therefore, the signification of the word used is ascertained, it will comprehend the position of the plaintiff as stated upon the record; for although his functions may be those of service, his employment is by the public, and the duties intrusted to him are official and a public charge. (*People ex rel. Henry* v. *Nostrand*, 46 N. Y. 375; *People ex rel. Kelly* v. *Common Council*, 77 id. 503, and cases cited at page 508.) But we are not to be too precise in seeking for words of definition; we may look also at the intent of the statute and so ascertain the meaning of the words used and who are aimed at as "those now in office." What was its object, and what the evil to which the prohibitory words applied? Its object was to limit or cut down expenses; and the evil was an increasing rate or scale of compensation. Its "fruit and profit," therefore, "is in its sense and spirit;" and so rendered, includes the plaintiff's case; for whether we consider the nature of the matter dealt with or its obvious purpose, it is reasonable to suppose that the legislature had in mind, when

selecting the language above quoted, all persons who, under any name, were the recipients of "salaries" from the city treasury; and in this extended sense, the words of the act should be construed. Moreover, the question presented by this appeal was answered adversely to the appellant's position in *Sweeny's Case* (58 N. Y. 625), and there has been no intention to depart from the construction there given to the statute now before us. There are incidental remarks in the opinion of ALLEN, J., in *Holley* v. *The Mayor* (59 N. Y. 170), and in *Brennan* v. *The Mayor* (62 id. 365), which, standing alone, appear to uphold the appellant's claim; but they must be read in reference to the cases then before the court, and limited to the subject-matter under consideration. They were doubtless made as illustrations, but were not necessary to the judgment in either case; nor was the point now presented, or the statute on which it turns, matter of argument or in any way involved in the decisions. The *Sweeny Case* (*supra*) was not referred to by either counsel or court and there is no reason to suppose that the remarks of the learned judge were intended to detract from the authority of that case. *Wines* v. *The Mayor* (70 N. Y. 613) was decided in favor of the plaintiff upon a construction in his favor of an act (chap. 582, Laws of 1870) later than and unlike the one in question, and does not aid the appellant.

Both upon principle and authority we think the judgment appealed from is right and should be affirmed.

All concur, FOLGER, Ch. J., concurring in result.

Judgment affirmed.